United States District Court
Southern District of Texas
**ENTERED**
November 02, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

GUADALUPE PALACIOS, JR.,            §
                                    §
        Plaintiff,                  §
                                    §
V.                                  §        CIVIL ACTION NO. H-19-4024
                                    §
ANDREW SAUL, COMMISSIONER OF THE    §
SOCIAL SECURITY ADMINISTRATION,     §
                                    §
        Defendant.                  §

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this social security appeal is Defendant's Motion for Summary Judgment (Document No. 12) and Plaintiff's cross-Motion for Summary Judgment (Document No. 14). Having considered the cross motions for summary judgment and the respective briefs and memorandum in support (Document Nos. 13 & 15), each side's response to the other's motion (Document Nos. 16 & 17), the administrative record, the written decision of the Administrative Law Judge, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendant's Motion for Summary Judgment be GRANTED, that Plaintiff's Cross Motion for Summary Judgment be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I.      Introduction

Plaintiff, Guadalupe Palacios, Jr. ("Palacios") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his

application for supplemental security income benefits.[1]  In two claims, Palacios maintains: (1) that "[t]he ALJ's RFC is not supported by substantial evidence because he failed to consider the opinion evidence in accordance with the proper legal standards;" and (2) that "[t]he ALJ failed to follow the appropriate legal standards when considering Plaintiff's past relevant work, which was a composite job."  The Commissioner, in contrast, maintains that there is substantial evidence in the record to support the ALJ's decision, that the decision comports with applicable law, and that the decision should be affirmed.

## II.    Procedural History

On or about August 22, 2017, Palacios filed an application for supplemental security income benefits, alleging that he has been disabled since January 1, 2016, as a result of a back problem, hand/wrist and arm problems, high blood pressure, arthritis, and a shoulder problem. The Social Security Administration denied his application at the initial and reconsideration stages.  After that, Palacios requested a hearing before an ALJ.  The Social Security Administration granted his request and the ALJ, Donald J. Willy, held a hearing on May 7, 2019, at which Palacios' claims were considered *de novo*.  (Tr. 29-61).  Thereafter, on May 22, 2019, the ALJ issued his decision finding Palacios not disabled.  (Tr. 10-24).

Palacios sought review of the ALJ's adverse decision with the Appeals Council.  The Appeals Council will grant a request to review an ALJ's decision if any of the following

---

[1] Palacios filed both a application for disability insurance benefits under Title II and an application for supplemental security income benefits under Title XVI.  At the administrative hearing Palacios waived his Title II disability insurance benefits claim because he was last insured for those benefits on December 31, 2011, which pre-dated, by several years, the date he claimed he became disabled.

circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest.  20 C.F.R. § 416.1470.  On August 9, 2019, the Appeals Council found no basis for review (Tr. 1-3), and the ALJ's May 22, 2019, decision thus became final.

Palacios filed a timely appeal of the ALJ's decision. 42 U.S.C. § 405(g).  Both sides have filed a Motion for Summary Judgment and been given time to respond to the other's motion.  The appeal is now ripe for ruling.


### III.    Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of  the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision  of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405(g).  While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable,  *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against

the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

## IV.     Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

4

he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one

is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in

any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting

*Milam v. Bowen,* 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe impairment" or combination of impairments, he will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity, he will be found disabled.

*Anthony,* 954 F.2d at 293; *see also Leggett v. Chater,* 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v.*

*Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991). Under this framework, the claimant bears the burden

of proof on the first four steps of the analysis to establish that a disability exists. If successful, the

burden shifts to the Commissioner, at step five, to show that the claimant can perform other work.

*McQueen v. Apfel,* 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner shows that other jobs

are available, the burden shifts, again, to the claimant to rebut this finding.  *Selders v. Sullivan*, 914

F.2d 614, 618 (5th Cir. 1990).  If, at any step in the process, the Commissioner determines that the

claimant is or is not disabled, the evaluation ends.  *Leggett,* 67 F.3d at 563.

Here, the ALJ found at step one that Palacios had not engaged in substantial gainful

employment since his alleged onset date of January 1, 2016.   At step two, the ALJ determined that

Palacios had the following severe impairments: osteoarthritis of multiple joints, and degenerative

disc disease of the lumbar spine.  At step three, the ALJ concluded that Palacios did not have an

impairment or a combination of impairments that met or equaled a listed impairment, including

Listings 1.02 and 1.04.  The ALJ then determined that Palacios had the "residual functional capacity

to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b).  However, [Palacios] is

limited to standing and/or walking a total of 4 hours (standing continuously for 30 minutes) and

sitting for a total of 6 hours (sitting continuously for 2 hours) during the 8-hour workday.  He is

limited to no more than occasional postural maneuvers. [He] is limited to occasional operation of

foot controls with the left foot, and occasional overhead reaching with the right upper extremity.  He

is limited to frequent pushing and pulling and frequent handling and fingering with the bilateral

upper extremities, and no more than occasional exposure to uneven terrain."  (Tr. 14).   The ALJ

then concluded, at step four, that Palacios could perform his past relevant work as a warehouse

supervisor "as performed in the economy [and] not as he performed it" and that he was, therefore,

not disabled.

In this appeal, Palacios complains about the ALJ's step four finding that he could perform

his past work.  In particular, Palacios complains that the ALJ did not properly consider the opinions

of his treating physician, and that the RFC the ALJ developed  was, as a consequence, not supported

by substantial evidence.  Palacios also complains that the ALJ erred in the consideration of his past work at step four and improperly determined that his past work aligned with the job of warehouse supervisor in the DOT (Dictionary of Occupational Titles) when the evidence at the administrative hearing only supported the conclusion that his past work was a "composite" job that was not akin to a warehouse supervisor position in the DOT.

In determining whether there is substantial evidence in the record to support the ALJ's RFC and his step four finding, the court generally considers four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating physicians on subsidiary questions of fact; (3) subjective evidence of pain and disability as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history and present age. *Wren,* 925 F.2d at 126.

## V.    Discussion

### A.    Objective Medical Evidence

The objective medical evidence in the record is not extensive.  Palacios was seen and treated by Dr. Son Duong from September 2017 to March 2019 for his complaints of joint pain, right shoulder pain, hip pain and back pain.   He was also seen by Dr. Obianuju Okeke for a consultative examination on November 30, 2017.  The subjective complaints and objective findings from all of those visits were completely and accurately summarized by the ALJ in his May 22, 2019, decision, but will be separately summarized herein.

On September 19, 2017, Palacios first saw Dr. Son Duong for complains of chronic joint pain, including right shoulder pain with an inability to lift with his right arm more than ninety (90)

7

degrees, pain in the joints of his hands, and right hip pain and numbness if standing more than ten minutes. Palacios had not been taking anything for the pain. Upon physical examination, Dr. Duong found that Palacios was unable to abduct with his right shoulder more than ninety (90) degrees because of pain, but his gait was stable and the examination of his hands, legs and feet were within normal limits. Dr. Duong ordered blood work, started Palacios on Meloxicam (an anti-inflammatory used to treat arthritis) for the pain, and instructed him to follow-up in a month. (Tr. 315-322).

At that follow-up appointment with Dr. Duong on October 19, 2017, Palacios reported pain in his joints, shoulder, and hip, with sharp pain in his left buttock running down his left leg, and aching in his right ribs and shoulder. Upon examination, Dr. Duong found tenderness upon palpation in Palacios' right lower ribs, a small notch in his ribs, no swelling in Palacios' right shoulder, but an inability to lift his arm above ninety (90) degrees, a stable gait, and an "ok" leg exam. Dr. Duong ordered x-rays and prescribed Palacios Tramadol (pain medication) and Lyrica (pain medication). (Tr. 310-315). The x-rays, taken that same day, revealed mild arthrosis in Palacios' left hip; degenerative disc changes in Palacios' low thoracic and lumbar spine; and mild glenohumeral and acromioclavicular arthrosis in Palacios' right shoulder. (Tr. 328-333)

At a follow-up visit with Dr. Duong on November 2, 2017, Palacios' motor exam was normal, as was his gait and stance. Dr. Duong prescribed Palacios Narco for his complaints of pain. (Tr. 351-355).

On November 30, 2017, Palacios underwent a consultative examination with Dr. Obianuju Okeke. X-rays of Palacios' lumbar spine associated with that examination revealed moderate hypertrophic lumbar spondylosis at L4-5 and L5-S1 (Tr. 335). Palacios reported to Dr. Okeke that he had low back pain upon getting up in morning and upon standing for more than ten minutes, pain

8

that results in his right lower extremity going to sleep, and pain and numbness with prolonged sitting. Palacios rated his back pain as 7/10. With regard to the pain in his hands, Palacios told Dr. Okeke that both his hands and wrists hurt, that his fingers other than his thumbs go to sleep, and that the pain is 8/10. As for his right arm and shoulder, Palacios reported that he had difficulty lifting his right arm due to pain, and rated the pain as 10/10. Upon physical examination, Dr. Okeke found that Palacios had normal motor strength, sensation and reflexes normal in upper and lower extremity; "He could not get up from seated position without support"; there was no "restriction in flexion, extension or rotation of the cervical spine;" and his "hips, knees, ankles and feet demonstrate normal range of motion." From the diagnostic testing, including the x-rays, Dr. Okeke found that Palacios had moderate hypertrophic lumbar spondylosis at L4-5 and L5-S1; degenerative disc changes in his low thoracic spine; osteoarthritis of hands marked by Heberden's and Bouchard's nodes; mild glenohumeral and acromioclavicular arthrosis; impingement syndrome of the left shoulder; and mild arthrosis of the left hip. In the conclusion section of his report, Dr. Okeke wrote, in relevant part:

> Claimant demonstrates ability to sit, move about, lift, carry, handle objects, hear and speak.
>
> * * *
>
> Lumbar spine showed a normal posture. Lumbar paraspinal muscles are nontender. Straight leg raise was negative. Otherwise there are no spasm, atrophy and motor, sensory and reflex abnormalities with radicular distribution. Claimant's gait and station are normal.
>
> There is bony deformity of the left shoulder. Both elbows, right shoulder, both wrists, left hip and left buttock were tender to palpation. There are Heberden's and Bouchard's nodes bilaterally. There is incomplete fist bilaterally. Both handgrips were very weak.
>
> There are no other joint deformities, bone and tissue destruction, crepitus, heat, redness, effusion, atrophy. There is abnormality of active and passive range of motion of right shoulder.

Muscle strength is 5/5 in all muscle groups.  Coordination, dexterity and motion in hands and fingers are normal.  Patient demonstrates an ability  to pick up a pen and some difficulty buttoning clothes.

Gait is normal.  There is no difficulty with heel and toe walking, squatting and hopping.  He was unsteady during tandem walking.

Right shoulder elevation is very painful and limited.  Passive range of motion of right shoulder is very painful and limited.  There is incomplete fist bilaterally.

Otherwise, there is no persistent disorganization of motor function of any other joint.  Gross and dexterous movements of other joints are normal.  Gait and station are normal.

Patient's grip strength squeezing my fingers was very weak in both hands, the ability to reach, handle, finger and feel were normal.  Sensation to cold, light touch and pain were normal and symmetrical.

Observations of the patient's general health reveal no wasting, fatigue or shortness of breath.

(Tr. 336-341).  In the "Range of Joint Motion Evaluation Chart" he completed, Dr. Okeke found that Palacios had extension of 30 degrees and flexion of 100 degrees in his back; lateral flexion of 30 degrees on both the right and left; abduction of the left shoulder of 140 degrees and abduction of the right shoulder of 90 degrees; extension of the left shoulder to 40 degrees; extension of the right shoulder to 30 degrees; flexion of the left shoulder to 140 degrees and flexion of the right shoulder to 90 degrees (Tr 336-337).

Palacios was next seen by Dr. Duong on December 12, 2017.  At that visit he complained about multiple locations of pain, but also reported that Narco appeared to be helping with the pain where other pain medications had failed.  Upon physical examination, Dr. Duong found no swelling in his hands or shoulder joints, but a decreased range of motion in the right shoulder due to pain.  Dr. Duong continued Palacios on Narco and added diclofenac sodium (an anti-inflammatory used

for pain) (Tr. 348-350).

On February 6, 2018, when he was next seen by Dr. Duong, Palacios reported that he had recently injured his left ankle, but it was better.  Dr. Duong found that Palacios could walk on that ankle without pain and that he had no joint swelling.  Palacios was continued on Norco for his chronic pain, and what Dr. Duong characterized as multiple joint pain and weakness, "mainly on upper extremity."   (Tr. 345-347) Two months later, in a follow-up with Dr. Duong, Palacios reported that he was having worsening pain on his left lower extremity.  Dr. Duong, upon physical examination, found no swelling of the left lower extremity joints, a stable gait, and an ability to bear weight and walk.  X-rays were ordered and the dosage of diclofenac was increased.  (Tr. 375-379).  The x-rays, done on April 27, 2018, revealed mild to moderate osteoarthritis in Palacios' left hip, mild osteoarthritis in his left knee, moderate multilevel lumbar spondylosis L4-5 and L5-S1, and mild arthrosis and soft tissue swelling in his left ankle.  (Tr. 381-387).

At his next visit with Dr. Duong on June 19, 2018, Palacios reported that his pain was slightly better, but that he was having a hard time standing or walking for long periods of time.  Dr. Duong noted the x-ray findings, which revealed osteoarthritis in Palacios' lower back, hip, knees and ankles, as well as Palacios' right shoulder pain which limited his grip and his ability to reach.  Dr. Duong also noted, as part of his physical exam assessment, that Palacios was slow standing up due to pain, and that he appeared to be in mild to moderate pain while walking.  Palacios was continued on Norco and diclofenac.  ((Tr. 372-374).  Several months later, on November 1, 2018, Palacios reported to Dr. Duong that he was still having hip and joint pain, and Dr. Duong made note of Palacios' slight limp when walking. Palacios was continued on both Norco and diclofenac.  (Tr. 470 - 478).   In the final treatment note in the record, dated March 19, 2019, Palacios reported to Dr.

Duong that the pain appeared to be worsening, and that he takes Norco regularly but feels like it doesn't last long.  A physical examination revealed a stable gait but some pain with ambulation. Palacios' prescriptions for Narco and diclofenac were both renewed.  (Tr. 482 - 485).

The objective medical evidence in the record reveals, as found by the ALJ, that Palacios has osteoarthritis of multiple joints, and degenerative disc disease of the lumbar spine. The objective medical evidence in the record, as well, supports the limitations contained in ALJ's RFC.  In particular, that RFC, which limited Palacios' overhead reaching and his standing to no more than thirty minutes at a time, took into consideration the pain and the restricted mobility in Palacios' right shoulder, the pain in multiple joints, and the degenerative disc disease in Palacios' lumbar spine. The objective medical evidence in the record supports the ALJ'S RFC and his disability determination.

**B.      Diagnosis and Expert Opinions**

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact.  Unless good cause is shown to the contrary, "the opinion, diagnosis and medical evidence of the treating physician, especially when the consultation has been over a considerable length of time, should be accorded considerable weight." *Perez v. Schweiker,* 653 F.2d 997, 1001 (5th Cir. 1981); *see also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses should be accorded great weight in determining disability."). In addition, a specialist's opinion is generally to be accorded more weight than a non-specialist's opinion.  *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994); *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990).  For the ALJ to give deference to a medical opinion, however, the opinion must be

more than conclusory and must be supported by clinical and laboratory findings.  *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981).  Further, regardless of the opinions and diagnoses and medical sources, "'the ALJ has sole responsibility for determining a claimant's disability status.'" *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)).

Here, there is an opinion from the consultative examiner, Dr. Okeke; an opinion from Palacios' treating physician, Dr. Duong; opinions from the state agency physicians who reviewed Palacios' medical records; and a opinion from Dr. Kweli Amusa, a medical expert who testified at the hearing before the ALJ.   Dr. Okeke's findings and opinions are set forth above.  Dr. Duong's opinions are set forth in a "Physical Assessment" form he completed on June 19, 2018 (Tr. 367-68). In that Physical Assessment form, Dr. Duong identified Palacios' impairment as "chronic pain secondary to polyarthritis," and opined that that condition would "often" interfere with the attention and concentration to perform simple work-related tasks, that Palacios would need to recline or lie down in excess of normal breaks, that he could walk one block without rest or significant pain, that he could sit 2 hours in an 8-hour workday and stand 2 hours in an 8-hour workday, that he would need to take hourly breaks of 10-15 minutes in duration, that he could only occasionally lift less than ten pounds, that he had limitations on repetitive reaching, handling or fingering, that he could use his right hand, fingers and arms only ten percent of the time for grasping, fine manipulation and reaching, and that he would likely be absent from work more than four times a month.  Dr. Amusa testified that Palacios has osteoarthritis in multiple joints and degenerative disease of the lumbar spine; that his impairments do not meet or equal a Listing; that he can lift 20 pounds occasionally and 10 pounds frequently; that he can stand 4 hours, 30 minutes at a time, in an 8 hour workday, and

can sit 6 hours, 2 hours at a time, in an 8 hour workday; that he can only do occasional overhead

lifting and only occasional operation of foot controls (Tr. 51-53).  Dr. Amusa also testified that she

disagreed with Dr. Duong's opinions about Palacios' ability to sit and stand, his need to take hourly

breaks, and his ability to lift no more than 10 pounds, because those opinions were not consistent

with the medical evidence as a whole, including the findings of the consultative examiner, Dr. Okeke

(Tr. 54).

In making his RFC determination, the ALJ primarily relied on the opinions of Dr. Amusa,

while discounting the opinions of Dr. Okeke and Dr. Duong.  In so doing, the ALJ wrote:

> On November 30, 2017, the claimant attended a consultative examination with Dr. Obianuju Okeke due to complaints of pain in the back, wrist, hand, arm, and shoulder (Exhibit 3F).  Physical exam findings revealed normal pulses in his bilateral upper and lower extremities (Exhibit 3F/7).  His motor strength, sensation, and reflexes were normal in all extremities.  However, he could not get up from a seated position without support.  There was no restriction in flexion, extension, or rotation of the cervical spine.  His hips, knees, ankles, and feet demonstrated a normal range of motion.  His lumbar spine showed a normal posture, and his lumbar paraspinal muscles were nontender (Exhibit 3F/8).  Straight leg raise was negative.  His gait and station were normal, and there were otherwise no spasm, atrophy, motor, sensory, or reflex abnormalities with radicular distribution.  There was bony deformation of the left shoulder.  Both elbows, right shoulder, both wrists, the left hip, and the left buttock were tender to palpation.  Both of his handgrips were very weak, and he was unable to make a complete fist bilaterally.  Degenerative nodes were noted bilaterally in both hands.  He had abnormal active and passive range of the right shoulder. Muscle strength was 5/5 in all muscle groups.  Coordination, dexterity, and motion in his hands and fingers was normal.  He demonstrated an ability to pick up a pen and had some difficulty buttoning his clothes.  His gait was normal, and there was no difficulty noted with heel and toe walking, squatting, and hopping.  He was unsteady during tandem walking.  Right shoulder elevation was very painful and limited, as was the passive range of motion of that shoulder.  Gross and dexterous movements of other joints was normal, as was the ability to reach, handle, finger, and feel (other than the weak grip strength in both hands).  X-rays of the lumbar spine revealed moderate hypertrophic lumbar spondylosis involving the L4-5 and L5-S1 region (Exhibit 3F/3).  Based on his examination, Dr. Okeke opined that the claimant had the ability to sit, move about, lift, carry, handle object[s], hear and speak (Exhibit 3F/8).  The undersigned does not find Dr. Okeke's opinion to be persuasive, as the

objective evidence within the record – even with Dr. Okeke's exam findings – support that the claimant is more limited than his opinion accounts for.

\* \* \*

At the hearing, Dr. Kweli Amusa, an impartial medical expert, testified that the record reflects that the claimant has osteoarthritis in multiple joints and degenerative disc disease of the lumbar spine (hearing testimony). Dr. Amusa testified that x-rays of the right shoulder and left hip showed mild osteoarthritis (*See also* exhibits 2F/2 and 4F). She testified that results from his consultative exam in 2017 showed a painful limited range of motion in the right shoulder and degenerative changes in his fingers. She testified that the claimant had x-rays of the lumbar spine at that time that showed moderate spondylosis at the L4-5 and L5-S1 region of the spine (*See also* exhibit 3F/3). Dr. Amusa testified that the claimant had repeat x-rays last year that revealed mild osteoarthritis in the left hip, left knee, left ankle, and the lumbar spine (*See also* exhibits 6F; and 8F). She testified that his primary care physician prescribed him Norco for pain, and he lost some of it while moving (*See also* exhibit 9F/5). She testified that his most recent visit with his primary care physician was in March 2019 and it indicated that he had a stable gait with some discomfort with ambulation. He had a positive drug screen for cocaine, benzos, and barbituates; however, he was prescribed Norco in spite of it (*See also* exhibits 9F/5, 8). Based upon her review of the record, Dr. Amusa opined that the claimant's impairments did not meet or medically equal any of the listings, specifically listings 1.02 and 1.04, as outlined above. She opined that the claimant would be limited to no lifting greater than 20 pounds occasionally and 10 pounds frequently. She opined that he could stand and/or walk a total of 4 hours (standing continuously for 30 minutes) and sit for a total of 6 hours (sitting continuously for 2 hours) during the 8-hour workday. Dr. Amusa opined that the claimant was limited to no more than occasional postural maneuvers. She opined that he is limited to occasional operation of foot controls with the left foot, and occasional overhead reaching with the right upper extremity. She opined that the claimant is limited to frequent pushing and pulling and frequent handling and fingering with the bilateral upper extremities. She opined that the claimant is limited to no more than occasional exposure to uneven terrain. Dr. Amusa opined that she disagrees with the opinion of the claimant's primary care physician (found in exhibit 5F), as he opined that the claimant could stand and sit for 2 hours, that he would need to take breaks of 10-15 minutes every hour, and that he was limited to lifting 10 pounds occasionally. She opined that the objective evidence in its entirety did not support those limitations.

Upon cross-examination, Dr. Amusa testified that she found that claimant had a residual functional capacity for less than the full range of light exertion, rather than sedentary, as objective testing showed the claimant had a normal range of motion in his joints (except for the right shoulder and she afforded a limitation for than in her

opinion), and he did not require an assistive device to walk/ambulate.  She opined that, despite a notation of limited flexion in the claimant's spine during his consultative examination mentioned by the claimant's attorney, the objective findings show he demonstrated an ability to ambulate normally and do things such as crouch and perform heel to toe walking, and she considered this in her opinion in regard to his residual functional capacity.  The undersigned affords Dr. Amusa's opinion to be persuasive, as it is wholly supported by the objective evidence, as outlined further below.

* * *

On June 19, 2018, Dr. Son Duong, the claimant's primary care physician, completed a Physical Assessment form and essentially opined that the claimant would be unable to work on a full-time basis due to his chronic pain, as he would be unable to sit, stand, and walk for the duration of the workday, would require hourly breaks of 10-15 minutes each, could only occasionally lift 10 pounds, and would miss work more than four times per month due to his impairments or treatment (Exhibit 5F).  The undersigned does not find Dr. Duong's symptoms to be persuasive, as his stringent limitations are not supported by the objective findings contained in his treatment notes or in the record as a whole, as further discussed below.

* * *

As noted above, the record reflects that the claimant has a history of chronic multiple joint pain complaints from osteoarthritis, and complaints of low back pain from lumbar degenerative disc disease.  As the testimony of Dr. Amusa reflects, the undersigned finds the claimant capable of light work (versus sedentary), as the objective findings mostly indicate that the claimant had a normal range of motion despite his pain complaints (aside from a decreased range of motion in his right shoulder, which is accounted for in the above residual functional capacity assessment).  The objective evidence mostly indicates that the claimant had a normal and stable gait; however, due to his pain complaints (some of which were noted in recent exam findings in regard to the appearance of pain while walking), the undersigned limited him to a total of 4 hours of standing and/or walking (30 minutes of standing continuously), and a total of 6 hours of sitting (2 hours continuously).  As the claimant was found to have moderate lumbar spondylosis via x-ray results, but there was no consistent documentation of spinal range of motion deficits, the undersigned limited him to occasional postural maneuvers due to his pain complaints.  As outlined above, x-rays of the left ankle revealed mild arthrosis and soft tissue swelling, and x-rays of his left knee revealed mild osteoarthritis, the undersigned limited him to occasional operation of foot controls with the left foot and occasional exposure to uneven terrain.  There were [ ] several findings within the record that indicates the claimant did not have any right shoulder swelling, but he had

16

a decreased range of motion when raising his right upper extremity overhead.  As such, the undersigned limited him to occasional overhead reaching with that extremity.  Additionally, due to findings from his consultative exam that indicated the claimant's bilateral handgrips were very weak, he had degenerative nodes in both hands, and he was unable to complete a complete fist bilaterally (with no consistent evidence of ongoing problems in that manner), the undersigned limited the claimant to frequent handling and fingering with his bilateral upper extremities.  There is no evidence within the record to indicate the claimant's impairments preclude the residual functional capacity assessment above.

(Tr. 16-17, 18-19, 20, 20-21).   It is here, in the ALJ's assessment of the expert medical opinions, and the discounting of Dr. Duong's opinions, that Palacios' first issue arises.  According to Palacios, the ALJ erred by giving greater weight to the opinion of a non-examining medical expert (Dr. Amusa) over that of his treating physician (Dr. Duong) when there was no evidence from a physician who either treated or examined him that contradicted Dr. Duong's opinions.

As explained by the ALJ, as well as the Commissioner in his response to Palacios' Motion for Summary Judgment in this case, the "stringent limitations" Dr. Duong placed on Palacios in the June 19, 2018 Physical Assessment were not supported by Dr. Duong's own findings or the other objective medical findings in the record.  Dr. Amusa did not point with any specificity to the contrary medical evidence in the record, but the ALJ did.  The ALJ noted the limited range of motion in Palacios' right shoulder, but the essentially normal objective medical findings otherwise.  While Palacios maintains that the objective findings of Dr. Okeke are not worthy of any credence, particularly those related to the range of motion in his spine,[2] nowhere in any of Dr. Duong's

---

[2] Palacios maintains that Dr. Okeke's opinions and his findings should have all been rejected by the ALJ, and should not be used herein as a basis for upholding the ALJ's consideration of Dr. Duong's opinions because the "Range of Joint Motion Evaluation Chart" completed by Dr. Okeke on November 30, 2017 (Tr. 336-337) has range of motion values that are *per se* invalid.  While Palacios is correct that the range of motion values on page 1 of Dr. Okeke's Range of Motion Evaluation Chart for "back" and "lateral (flexion)" exceed the maximum (30 degrees found out of a possible of 25 degrees; 100 degrees found out of a possible of 90 degrees), Palacios has not pointed

treatment notes are there contrary range of motion findings that would either support his "stringent limitations" opinions or a lesser RFC than that found by the ALJ.   Here, where the ALJ explained why he gave less weight to the opinion of Dr. Duong, and more weight to the opinion of Dr. Amusa, and where there is objective medical evidence from an examining physician that contradicted the opinions of Dr. Duong on Palacios' ability to sit, stand and lift, the ALJ did not err in his consideration of the expert medical opinions in the record.   In addition, that consideration of the expert medical opinions in the record supports the ALJ's RFC and his disability determination.

### C.      Subjective Evidence of Pain and Disability

The next element to be weighed is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends. Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will not render him disabled. *Cook*, 750 F.2d at 395. The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423. The statute provides that allegations of pain do not constitute conclusive evidence of disability. There must be objective medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to cause pain. Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence on the record. 42 U.S.C. § 423. "Pain constitutes a disabling condition under the SSA only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.' " *Selders*, 914 F.2d at 618-19 (citing *Farrell v. Bowen*, 837 F.2d 471, 480

---

to any range of motion values relative to his spine that would support Dr. Duong's opinions about his ability to sit and stand or his ability to lift no more than 10 pounds occasionally.  In addition, nowhere does Palacios point to any objective medical evidence that supports Dr. Duong's opinion that he would need to take a 10-15 minute break every hour.

(5th Cir. 1988)). Pain may also constitute a non-exertional impairment which can limit the range of jobs a claimant would otherwise be able to perform. *See Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994). The Act requires this Court's findings to be deferential. The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has had the opportunity to observe the claimant. *Hames*, 707 F.2d at 166.

Palacios testified at the hearing before the ALJ that he can no longer do his past work as a warehouse supervisor because of the amount of walking it required as well as the pain he has from walking/standing and sitting.  According to Palacios, he can only sit comfortably for 10 to 15 minutes, he needs to periodically sit down when he's making breakfast, and he cannot walk far enough to comfortably shop for groceries.  Palacios also testified that the pain medication helps somewhat, but that he is still in considerable pain.  In considering Palacios' subjective complaints of disabling pain, the ALJ concluded, as follows, that such complaints were not consistent with the other evidence in the record:

> At the hearing, the claimant testified that he has pain when sitting and walking, and when he stands for a while (hearing testimony).  He shops in stores, but is unable to shop for very long.  He sits on a stool while cooking because he cannot stand very long.  He is unable to sit for longer than 10-15 minutes at a time.  He testified that his pain is not getting better.  It is hard for him to get out of bed, and he ha[s] difficulty bending to pick up clothes after showering.  He has to lean on the wall while doing so.  He has pain in every knuckle in his left hand.  His right hand has a little more strength.  He works on small engines, such as lawnmowers, for friends and family and his knuckles hurt all day the following day.  He takes pain medication every 2-3 hours, which helps but does not totally alleviate the pain, and only last[s] for a few hours.  The claimant testified that sometimes his pain is so severe that he is tempted to call 911.  He has to sit on his side and keep twisting and turning, as he cannot sit straight up for long.  He does not have trouble picking up objects, but has trouble writing.  He testified that his doctor wanted him to see an orthopedic surgeon for trouble with his right shoulder.  He can lift his right arm up, but it is hard to use it.

* * *

While the claimant's impairments could be reasonably expected to produce the symptoms alleged, his complaints suggest a greater severity of impairment than can be shown by the objective medical evidence alone. In such instances, the regulations provide that the following factors must be considered: 1) the claimant's activities of daily living, 2) the location, duration, frequency, and intensity of pain or other symptoms, 3) precipitating and aggravating factors, 4) frequency, and intensity of pain or other symptoms, 5) treatment, other than medication, for relief of pain or other symptoms, 6) any measures other than medication used to relieve pain or other symptoms, and 7) any other factors concerning functional limitations and restrictions due to pain or other symptoms produced by medically determinable impairments (20 C.F.R. 404.1529, 416.929, Social Security Ruling 16-3p). The claimant's statements about symptoms, evidence submitted by treating, examining, or consulting physicians or psychologists, and third party observations may also be considered. The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. Although the claimant has received some treatment for the allegedly disabling impairment(s), that treatment has been essentially routine and/or conservative in nature. The claimant has been prescribed and has taken appropriate medications for the alleged impairments, which weighs in the claimant's favor, but the medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms.

Although the claimant has described daily activities which are fairly limited in his hearing testimony, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

(Tr. 15, 21).

Here, because Palacios makes no complaint about the ALJ's consideration of his subjective symptoms, and because there is nothing in the record to suggest that the ALJ made improper credibility findings, or that he weighed the testimony improperly, this factor also supports the ALJ's RFC and his disability determination.

20

### D.     Vocational Factors

The fourth factor considered is the claimant's educational background, work history and present age.  A claimant will be determined to be disabled only if the claimant's physical or mental impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(a).

Here, at the time of the administrative hearing, Palacios was sixty-two (62) years old, he had a high school education and two years of college classes, and past work experience as a warehouse supervisor.  After having determined that Palacios could engage in a limited range of light work, the ALJ inquired of a vocational expert whether Palacios could perform his past work as a warehouse supervisor. The vocational expert testified that the job of warehouse supervisor, as performed in the national economy, was a skilled job at the light exertional level, and that Palacios could perform that job within the RFC determined by the ALJ. (Tr. 56-57).

It is here that Palacios' second issue in this appeal arises.  Palacios maintains that he cannot, within the RFC found by the ALJ, perform his past work as a warehouse supervisor *as that work was actually performed* because walked for most of the day performing that job, and also did some cleaning.  Palacios also argues that his past work was improperly characterized as a warehouse supervisor under the DOT (Dictionary of Occupational Titles) when it should have been considered a "composite" job.  Palacios further argues that if his past work had been considered a composite job, the ALJ would have had to consider, at step four, whether Palacios could perform the job as it was actually performed.

Past work is a "composite job" if it has "significant elements of two or more occupations"

21

and does not have a "counterpart in the DOT." SSR 82-61. Whether a job is a composite job is based on the "significant" elements of the job performed and whether those significant elements could be considered two separate occupations under the DOT. *Carol B.M. v. Berryhill*, Case No. 3:17-CV-3163-BK, 2019 WL 1403367 *5 (N.D. Tex. March 27, 2019).

In describing his past work, Palacios testified at the hearing that he worked along with those he supervised, lifted boxes that weighed between 10 and 15 pounds, and supervised the unpacking of boxes, and the paperwork associated therewith (Tr. 34-38). He also testified that he had to walk a lot (90% of the time) from place to place in the warehouse (Tr. 38), and spent time cleaning up unpacked boxes (Tr. 39). Palacios argues that the ALJ erred by failing to consider whether his past work as a warehouse supervisor was a composite job. Palacios, however, does not articulate what "significant elements" of his past work made his past work a composite job, much less what two separate occupations his prior work consisted of. The burden was on Palacios, at step four, to show that he could not perform his past work. Despite that burden, the fact that he was represented by counsel at the administrative hearing, and the fact that counsel cross-examined the vocational expert, no mention was made at the administrative hearing about the vocational expert's characterization of Palacios' past work as a warehouse supervisor, or his ability to perform that job, as generally performed in the national economy, within the RFC found by the ALJ. Because no challenge was made to the vocational expert's characterization of his past work, Palacios waived any argument relative to whether his past work should have been considered a composite job. *Carol B.M.*, 2019 WL 1403367 at *5-6.

In addition, even if Palacios had not waived the issue, the job of warehouse supervisor under the DOT generally contains the same type of work and tasks that Palacios testified about at the

hearing (DOT 921.133-018: "Supervises and coordinates activities of workers engaged in lifting, transporting, storing, and loading materials and products by use of conveyors, cranes, hoists, or industrial trucks, applying knowledge of plant layout and material-handling equipment and procedures. Studies receiving or shipping notices, requests for movement of raw materials and finished products, and reports of warehousing space available to develop schedule for material handling activities. May confer with supervisors of other departments to coordinate flow of materials or products. May verify or prepare records, such as routing slips, material requisitions, and job orders. May supervise activities of shipping and receiving personnel. May train new workers."). The vocational expert who testified at the hearing, when asked about the cleaning Palacios did in his past work as a warehouse supervisor, specifically did not find that it was a separate occupation, but rather, that Palacios was acting as a "working supervisor." (Tr. 58). Because both the ALJ and the vocational expert considered all the aspects of Palacios' past work and determined that his past work fell within the definition of a warehouse supervisor under the DOT, the ALJ did not err in his determination at step four that Palacios could perform his past work as a warehouse supervisor, as that work is generally performed in the national economy. This last factor, therefore, also supports the ALJ's disability determination.

**VI.    Conclusion and Recommendation**

Based on the foregoing, and the conclusion that the ALJ did not err in his consideration of the expert medical opinions in the record, or his consideration of Palacios' past work at step four, the Magistrate Judge

RECOMMENDS that Defendant's Motion for Summary Judgment (Document No. 12) be

GRANTED, that Plaintiff's Motion for Summary Judgment (Document No. 14) be DENIED, and that the decision of the Commissioner be AFFIRMED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), to the recommendation made herein.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the fourteen-day period bars an aggrieved party from attacking conclusions of law on appeal.  *See Douglass v. United Serv. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Court Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 2nd day of November, 2020.

Frances H. Stacy
United States Magistrate Judge